# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-41450

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

EUGENIO PEDRAZA,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

January 22, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:13-CR-305

Before SMITH, WIENER, and GRAVES, Circuit Judges.

PER CURIAM:*

Eugenio Pedraza appeals his conviction, under 18 U.S.C. §§ 371, 1519 and 1505, for conspiracy to falsify, and for falsifying, investigative reports while he was the Special Agent-in-Charge of the McAllen, Texas office of the U.S. Department of Homeland Security's Office of Inspector General. Finding no reversible error, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-41450

## FACTS AND PROCEDURAL HISTORY

Eugenio Pedraza was the Special Agent-in-Charge (SAC) of the McAllen, Texas office of the U.S. Department of Homeland Security's (DHS) Office of Inspector General (DHS-OIG). DHS-OIG is responsible for investigating wrongdoing by DHS employees. Pedraza was responsible for supervising these investigations and approving and signing DHS-OIG agents' investigative reports.

In 2011, Pedraza learned his office would undergo an internal DHS-OIG inspection and became aware of which files the inspectors would review. In preparation for this inspection, Pedraza instructed several of his agents to falsify investigative reports to "fill the gaps" in cases that had been open for more than a year and where there had been little, if any, activity for an extended period of time. These cases included allegations against a customs officer who was suspected of smuggling narcotics and aliens into the United States for a Mexican cartel; a border patrol agent who allegedly approached a Federal Bureau of Investigation (FBI) informant and offered to help smuggle drugs and aliens into the United States; a customs officer who allowed a recreational vehicle to enter the United States with 1700 pounds of marijuana; a border patrol agent who was allegedly facilitating the smuggling of aliens and cocaine into the United States; a border patrol agent who was allegedly facilitating the transportation of pregnant women into the United States; and a border patrol agent who was allegedly selling fraudulent entry documents.

During the inspection, claims that Pedraza had instructed agents to falsify records were disclosed to Inspector James Izzard. DHS Deputy Assistant Inspector General John Ryan conducted an investigation and completed a report dated November 3, 2011. Ryan's report concluded that none of the agents heard Pedraza use the word "fabricate" and that the allegations

2

No. 14-41450

were "related to the anxiety, pressure to have a successful inspection, lack of management oversight and miscommunication among staff and management." Ryan also concluded that he believed a "lack of clear communication between the field agents and the SAC led to a misunderstanding of what the SAC expected from the field agents" and closed the investigation.

Following an FBI investigation, Pedraza was charged in a 13-count indictment. The district court dismissed five counts prior to trial. Pedraza moved to admit Ryan's report as an exhibit under the public records exception to the hearsay rule, Rule 803(8)(A)(iii) and (B) of the Federal Rules of Evidence. The district court denied Pedraza's request on the basis that Ryan lacked authority to conduct the investigation, Ryan was being investigated for covering up Pedraza's criminal conduct, and the report contained inadmissible hearsay. However, the final DHS-OIG inspection report, which made no allegation of wrongdoing, was admitted. Pedraza also filed a motion to dismiss the section 1519 counts, alleging that section 1519 did not apply to an agency's internal processes. The district court denied the motion.

Following a trial, Pedraza was convicted of the following:

- Count 1 – Conspiring with other agents "to falsify documents and make false entries in records with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of DHS-OIG" with regard to the criminal investigations in violation of 18 U.S.C. § 1519 and with regard to the September 2011 inspection in violation of 18 U.S.C. § 1505.

- Counts 2, 4, 6, 10, and 11 – Violating 18 U.S.C. § 1519 by falsifying documents and making false entries in case files "with the intent to impede, obstruct, and influence the investigation and proper administration" of the criminal investigations and the 2011 inspection in violation of 18 U.S.C. § 1505.

Pedraza was sentenced to 37 months' imprisonment and subsequently filed this appeal.

No. 14-41450

## DISCUSSION

**I. Whether the district court abused its discretion by excluding a defense exhibit consisting of an investigative report by a DHS inspector regarding the allegations against Pedraza.**

This court reviews the district court's exclusion of evidence for an abuse of discretion, subject to harmless error. *United States v. Sharpe*, 193 F.3d 852, 867 (5th Cir. 1999). Evidentiary rulings will be affirmed unless they affect a defendant's substantial rights. *Id. See also United States v. Macedo-Flores*, 788 F.3d 181, 191 (5th Cir. 2015).

Pedraza asserts that the district court abused its discretion by not admitting the Ryan report under the public record hearsay exception of Rule 803 of the Federal Rules of Evidence. Specifically, Pedraza argues that Ryan's investigation was authorized by law and that the report was trustworthy.

The government asserts that Pedraza failed to establish that Ryan had legal authority to conduct the investigation and the court properly found the source of information was not trustworthy.

Rule 803 provides, in relevant part, that a "record or statement of a public office" is not excluded by the rule against hearsay if it sets out "in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(iii), (B).

The district court allowed the admission of the DHS-OIG inspection report. However, the district court would not preadmit Ryan's separate report, which included double hearsay in the form of Pedraza's self-serving statements to Ryan as well as Ryan's personal opinions or conclusions. The district court indicated that it would consider admitting the exhibit later, assuming Pedraza

4

established that it fell within the Rule 803 exception. During cross-examination of one of the agents, Pedraza again attempted to get the report admitted based on a series of questions about whether Pedraza ever used the word "falsify." The district court denied admission.

Pedraza asserts that the Ryan report documented a legally authorized investigation under 5 U.S.C. § App. 3, § 4(a)(1).[1] However, as the district court stated, DHS-OIG inspectors normally do not inspect the inspectors. Further, the final DHS-OIG report was admitted. Moreover, regardless of whether Ryan's report was a public record that set forth the findings of a legally authorized investigation, the source of information indicates a lack of trustworthiness. *See* Fed. R. Evid. 803(8)(B).

Pedraza asserts that the government failed to establish the untrustworthiness as required by *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300 (5th Cir. 1991). However, as Pedraza conceded in his sentencing memorandum, the district court was already aware that Ryan was being investigated for covering up any wrongdoing. While discussing his cooperation with authorities, Pedraza stated that: "As the court will recall from reading the grand jury transcripts and other case materials, there was (and presumably is) an investigation into actions by higher-ups within the Washington management structure of the DHS-OIG. In particular, John Ryan was mentioned as being under investigation." Pedraza then recounted how Ryan's action of instructing Pedraza to send documents to an outside fax number "clearly seems to fit the government's theory that Ryan desired to

---

[1] "It shall be the duty and responsibility of each Inspector General, with respect to the establishment within which his Office is established . . . to provide policy direction for and to conduct, supervise, and coordinate audits and investigations relating to the programs and operations of such establishment. . . ." 5 U.S.C. § APP. 3 § 4(a)(1).

No. 14-41450

cover up any problems with the McAllen Field Office and to keep those problems from other Washington headquarters managers."

Therefore, we conclude that Pedraza has failed to establish that the district court abused its discretion. Further, even if the court erred by excluding Ryan's report, there is no indication that the report would have a substantial impact on the jury's verdict, thus any error would be harmless.

## II. Whether 18 U.S.C. § 1519 applies to attempts to influence the internal processes of an agency.

This court reviews de novo a claim regarding the proper interpretation of a statute. *United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008).

> The starting point for interpreting a statute is the language of the statute itself. When construing a criminal statute, we must follow the plain and unambiguous meaning of the statutory language. Terms not defined in the statute are interpreted according to their ordinary and natural meaning . . . as well as the overall policies and objectives of the statute. Furthermore, a statute must, if possible, be construed in such fashion that every word has some operative effect. Finally, we have found it appropriate to consider the title of a statute in resolving putative ambiguities.

*United States v. Kay*, 359 F.3d 738, 742-43 (5th Cir. 2004) (internal marks and footnotes omitted).

Pedraza asserts that his convictions on Counts 1, 2, 4 and 6 should be reversed "because 18 U.S.C. § 1519 does not apply to attempts to impede the internal policies and processes of an agency, including, in this case, the internal DHS inspection."

The government asserts that this claim is without merit as section 1519 prohibits Pedraza's conduct.

Section 1519 states:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the

investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519.

Pedraza argues that "within the jurisdiction" does not apply to an agency's internal processes or inspections. Pedraza does not offer any persuasive authority for such a proposition. Further, the plain language of section 1519 renders Pedraza's argument meritless.

Accordingly, we conclude that the district court did not err in not dismissing the counts under section 1519.

## III. Whether the evidence sufficiently supported Pedraza's convictions on Counts 10, 11, 4 and 6.

This court reviews challenges to the sufficiency of the evidence de novo. *United States v. Grant,* 683 F.3d 639, 642 (5th Cir. 2012). The court views all evidence in the light most favorable to the government, with all reasonable inferences and credibility determinations made in the light most favorable to the verdict. *Id.*

Pedraza asserts that the evidence was insufficient to establish that he intended to interfere with a criminal investigation. Alternatively, Pedraza argues that the district court abused its discretion in denying his motion for a new trial.

Count 10 charged Pedraza with attempting to influence an investigation involving Special Agent Edwin Castillo in violation of 18 U.S.C. § 1519. Pedraza argues that Castillo's testimony "makes clear that Agent Pedraza was simply asking Agent Castillo to prepare the paperwork to close out a dormant investigation" that he believed was a "dead file." However, the record does not support that claim.

Castillo testified that Pedraza instructed him to draft and sign a memorandum of activity (MOA) in a case involving an allegation received by Border Patrol Officer Ricardo Villarreal that another border patrol officer was selling fraudulent documents or entry permits for a fee of $600.[2]  Villarreal had reported that he received the information from a driver who crosses at the Los Indio, Texas, Port of Entry (POE) on a daily basis.  This matter was reported to DHS on January 19, 2010, and there had been no activity on it for a substantial period of time.  Castillo testified that Pedraza instructed him on what to include in the MOA, specifically, that DHS-OIG had attempted and failed to identify and locate the "unknown motorist" making the allegation against the border patrol officer.  Castillo testified that he had not worked on the case and that he believed the information Pedraza instructed him to include in the MOA was false.  Castillo had not performed any of this investigative work and did not have knowledge of anyone else in the office conducting such work.  Castillo also testified that Pedraza also then instructed him to draft a report to close the investigation.  Castillo later reported these activities to Izzard during the office inspection.

Pedraza argues that this evidence was insufficient because there was a report from another agent, Rudy de Luna, who said he had attempted to locate the source in this matter.  However, de Luna did not testify at trial and Castillo testified that he had not seen de Luna's report.  Further, the record fails to establish that de Luna's report was in the case file at the time Pedraza instructed Castillo to draft the MOA or closing report.  While Castillo's report was prepared in 2011, it was dated January 19, 2010.  De Luna's report was dated February 3, 2010, but there is no way of knowing whether it was also backdated.  Regardless, even if de Luna had completed such a report prior to

---

[2] Castillo testified pursuant to a verbal non-prosecution agreement.

Castillo, it would have no bearing on the veracity of the information Castillo testified that Pedraza instructed him to include in his report.

Additionally, Villarreal testified at trial that he knew the identity of the individual who had provided the information regarding the corrupt border patrol officer and had developed a rapport with him over a period of time because he crossed the border on a daily basis. Further, Villarreal testified that he and the "unknown motorist" had met with two other DHS-OIG agents, Wayne Ball and Camillo Garcia, and that they were provided with the individual's identity. Villarreal also testified that de Luna never contacted him.

Count 11 charged Pedraza with attempting to obstruct a criminal investigation involving Special Agent Rolando Gomez and the deactivation of a confidential source in violation of 18 U.S.C. § 1519. Pedraza asserts that "Agent Gomez' testimony makes clear that the investigation was over" and that deactivating the source was merely the final step in closing the investigation. Pedraza also asserts that both the testimony of Gomez and Special Agent Della Saenz establish that this was just an internal procedure and had nothing to do with obstructing a criminal investigation. But, again, the record does not support Pedraza's claims.

Gomez testified that Pedraza instructed him to include false information in a MOA in a case involving a confidential informant (CI) and a corrupt Customs inspector who was facilitating the smuggling of aliens into the United States. The CI was given an immigration document allowing her to remain in the United States as long as she cooperated with law enforcement in a criminal investigation. Gomez testified that the CI later complained about the way she was being treated and that Pedraza instructed him to deactivate her. The CI was then deactivated and, thus, had to return her immigration documents. Upon deactivation, she was escorted back to Mexico by Agents Saenz and

Marco Rodriguez.  Gomez testified that he informed Pedraza that Saenz and Rodriguez were escorting the CI back to Mexico shortly after the agents left the office with the CI.

Gomez testified that he later drafted the MOA and included a statement that the CI had been returned to Mexico by Rodriguez and Saenz.  However, Pedraza removed the names of Rodriguez and Saenz and changed the MOA to say that Gomez and "Joe Blow" escorted the CI to the POE.  Gomez testified that he confronted Pedraza and told him that information was incorrect, but that Pedraza told him, "I had to put my name in the report, in the memorandum of activity because she was my source, and that's how headquarters wanted it."  Gomez then instead changed the MOA to say that he and Saenz returned the CI to Mexico because he felt it would be better to include a female's name since the CI was female than to use the name "Joe Blow."  Pedraza approved this MOA.  Gomez later reported this incident to his new supervisor, David Green.

In his brief, Pedraza cites his opening statement, which is not evidence, that his instruction to change the names was based on his "mistaken belief" that  Gomez personally escorted the CI back to Mexico and that "Joe Blow" was just a placeholder for the correct name.  Pedraza also asserts that there is no evidence that he knew Gomez did not escort the source back to Mexico.  However, email messages document the edits that were exchanged between Pedraza and Gomez and lend credibility to the testimony offered by Gomez.[3]

Counts 4 and 6 charged Pedraza and Marco Rodriguez with knowingly falsifying documents related to investigations in cases involving corrupt border

---

[3] Saenz also testified that Pedraza instructed her to "bridge the gaps" in case files that she had not worked on, but she told him she could only document when an investigation was actually assigned to her.  Various other agents also testified, as set out in the briefs and the record, but Pedraza is not challenging the sufficiency of the evidence as it relates to them.

No. 14-41450

patrol officers facilitating the smuggling of narcotics and aliens, including pregnant females, in violation of 18 U.S.C. § 1519. Pedraza simply asserts that: "There was no evidence that Pedraza and Rodriguez, with whom he did not get along, ever discussed backdating reports. Nor was there any evidence that Agent Pedraza possessed the necessary intent to interfere with either the inspection or a criminal investigation." However, the record does not support Pedraza's argument.

Special Agent Laura Sirles testified regarding evidence that established the falsity of dates Pedraza and Rodriguez claimed certain actions were taken. Further, Special Agent Eraslio Flores testified regarding Pedraza's "very stressed out" and nervous demeanor regarding the upcoming inspection and his statement that "I don't want anything to come back on me. Not one thing."[4]

With respect to counts 4 and 6, the government correctly cites *United States v. Kington*, 875 F.2d 1091 (5th Cir. 1989), for the proposition that: "[W]here, as here, the government presents circumstantial evidence of an ongoing pattern of similar transactions, the jury may reasonably infer from the pattern itself that evidence otherwise susceptible of innocent interpretation is plausibly explained only as part of the pattern." *Id.* at 1100.

We conclude that "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis original). Thus, we affirm on this issue.

---

[4] Additionally, Flores testified that Pedraza also asked him to "bridge the gap" on a case he had never previously worked on and got "upset" and "his face got flushed" when Flores told him he could not do that.

11

No. 14-41450

## CONCLUSION

For the reasons set out herein, Pedraza's final judgment of conviction is AFFIRMED.